# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| SEQUATCHIE MOUNTAIN CREDITORS, | ) | CASE NO. 5:17-cv-1042 |
| | ) | |
| | ) | JUDGE SARA LIOI |
| PLAINTIFFS/APPELLANTS, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| JENNIFER LILE, Representative of the Estate of Deceased Joseph J. Detweiler, | ) | |
| | ) | |
| | ) | |
| DEFENDANT/APPELLEE. | ) | |

This matter is before the Court on the appeal pursuant to 28 U.S.C. § 158(a)(1) by plaintiffs/appellants[1] Sequatchie Mountain Creditors ("plaintiffs") from the following two orders in favor of defendant/appellee Jennifer Lile ("defendant") entered by the United States Bankruptcy Court, Northern District of Ohio, in plaintiffs' adversary case (No. 09-6118): (1) the order and related memorandum opinion, *In re Detweiler*, No. 09-6118, 2017 WL 650062 (Bankr. N.D. Ohio Feb. 16, 2017), and (2) the order and related memorandum opinion, *In re Detweiler*, No. 09-6118, 2017 WL 1483489 (Bankr. N.D. Ohio Apr. 25, 2017). (*See* Doc. No. 6-1 (Second Amended Notice of Appeal) at 1229-32.)

---

[1] All plaintiffs remaining after the bankruptcy court granted partial summary judgment to defendant/appellee bring the instant appeal, except for plaintiffs George and Susan Stone, Marvin and Carol Ferkinhoff, and Charles and Ellen McAvoy, who prevailed at trial on the merits. (Doc. No. 6-1 at 1212 n.1 (All page number references are to the page identification numbers generated by the Court's electronic filing system.).)

Both plaintiffs and defendant filed their respective briefs[2] and appendices[3] thereto, and the appeal is ripe for decision. For the reasons that follow, the bankruptcy court's orders are affirmed.

## I. BACKGROUND

This case has an extensive factual and procedural history, which is briefly summarized here for context. The Court will provide greater detail later in this opinion as necessary for the Court's analysis.

The adversary case underlying this appeal arose in the chapter 11 bankruptcy proceeding of Joseph Detweiler ("Detweiler"),[4] who filed his bankruptcy petition on August 17, 2009.[5] Detweiler was the sole owner and director of J.J. Detweiler Enterprises, Inc. ("JJDEI") and Sequatchie Mountain LLC ("Sequatchie LLC"). Sequatchie LLC was established by Detweiler to facilitate the Sequatchie Pointe project ("Sequatchie Pointe"), a planned development of over 6,756 acres of land straddling Marion County Tennessee and Dade County Georgia. Lots were sold between October 2006 and October 2008 by the Sequatchie Pointe sales force. Plaintiffs purchased undeveloped lots at Sequatchie Pointe. *In re Detweiler*, 2017 WL 650062, at *1-2. They allege that Detweiler's misrepresentations and fraudulent conduct related to their land purchases resulted in $13,500,000.00 of nondischargeable damages under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). *Id.*

---

[2] Doc. No. 6 ["Pls. Br."], and Doc. No. 7 ["Def. Br."].

[3] Doc. No. 6-1 ["Pls. App."], and Doc. No. 7-1 ["Def. App."].

[4] References to "debtor" refer to Joseph Detweiler in the underlying bankruptcy proceeding.

[5] *See* Case No. 09-63377 (Bankr. N.D. Ohio).

The bankruptcy court granted summary judgment in favor of Detweiler on all plaintiffs' adversary claims under § 523(a)(4) and (a)(6), and the § 523(a)(2)(A) claims of plaintiffs Wesley Jinks, Mary Czajka, Ana Rodriguez, William King, Manuel Real, Gene Renz, Joyce Renz, and the Estate of John Hallman. That decision is not on appeal here. The bankruptcy court then conducted a four-day trial on the remaining plaintiffs' § 523(a)(2)(A) claims, and rendered its decision on February 16, 2017.[6]

The bankruptcy court ruled against defendant and in favor of the § 523(a)(2)(A) claims of plaintiffs George Stone, Susan Stone, Charles McAvoy, Ellen McAvoy, Marvin Ferkinhoff, and Carol Ferkinhoff.[7] In so ruling, the bankruptcy court found that Detweiler was responsible for false representations made with an intent to deceive these plaintiffs regarding the existence of bonds covering the roads for lots purchased on the Georgia side of Sequatchie Pointe. *See id.* at *14, 19, 22. The bankruptcy court rendered judgment in favor of defendant on all other claims, including plaintiffs' claims that Detweiler was responsible for false representations concerning project completion deadlines, which are now at issue here on appeal. *Id*. at * 22.

The losing plaintiffs filed a motion in the adversary case to alter or amend judgment, which was denied. *In re Detweiler*, 2017 WL 1483489, at *1. Plaintiffs appealed the bankruptcy court's rulings from the trial and upon reconsideration. No cross-appeal was filed. Upon election by defendant/appellee, the appeal was transferred by the Bankruptcy Appellate Panel of the Sixth Circuit to the Northern District of Ohio. (Doc. No. 1-5.)

---

[6] After the trial was completed, but before the bankruptcy court issued its decision, Detweiler passed away and Jennifer Lile, the executor and representative of Detweiler's estate, was substituted as the defendant in this matter. *In re Detweiler*, 2017 WL 650062, at *1.

[7] This ruling is not on appeal here, and the Court will not further address the bankruptcy court's ruling in favor of plaintiffs on the issue of Georgia bonds unless relevant to the Court's analysis of the instant appeal.

## II. ISSUES ON APPEAL

Plaintiffs identify three items in the statement of issues:

1. Did the trial court err by finding against the Plaintiffs because Detweiler's agents made fraudulent representations rather than Detweiler making the fraudulent representations?

2. Did the trial court err by finding Detweiler was not liable for the actions and or inactions of his agents, employees, and independent contractors?

3. Did the trial court err by not applying Tennessee law when the Plaintiffs were defrauded in Tennessee land purchases and Tennessee had the most significant contracts to the allegations?

(Pls. Br. at 1151.)

As plaintiffs describe it,

[t]he crux of this appeal turns on the issue of whether Detweiler can be held liable for the fraudulent actions and inactions of his agents. This case presents a slightly more nuanced question about who possessed the requisite knowledge to knowingly make a material misrepresentation to the purchasers. Detweiler certainly knew that the development was financially inviable and admitted as much during his deposition. However, while instructions to invent construction deadlines were given to the salespeople, none of them had knowledge of the financial inviability [sic] of the development. As that salesforce was working for Detweiler, and by not informing the staff that these sales representations were false, Detweiler must be held liable for those fraudulent misrepresentation [sic] – and the analysis needs to focus on what Detweiler knew, and when, rather than what the salespeople knew. . . . The trial court erred by examining whether the sales people were aware of the inviability of the project.

(*Id*. at 1172-74.)

The issues on appeal focus on questions of agency law, and the choice of law applicable

thereto. But the underlying premise asserted in the statement of issues regarding Detweiler's

liability is that the Sequatchie Pointe sales force made fraudulent representations about project

completion deadlines. The bankruptcy court ruled, however, that neither Detweiler nor the

Sequatchie Pointe sales force made false representations with an intent to deceive plaintiffs regarding project completion deadlines. *See In re Detweiler*, 2017 WL 650062, at *15-16.

Although not specifically identified in the statement of issues, plaintiffs challenge the bankruptcy court's rulings on issues of both fact and law concerning the premise underlying their statement of issues—allegedly false representations made to plaintiffs with an intent to deceive about construction timelines. (*See e.g.* Pls. Br. at 1174 ("Several other errors are present in the trial court's holding, which are elucidated throughout this brief.").) "[A] district court reviewing a bankruptcy court ruling is subject to the same limitations imposed on any appellate tribunal." *In re H & S Transp. Co., Inc.*, 110 B.R. 827, 830 (M.D. Tenn. 1990), *aff'd,* 939 F.2d 355 (6th Cir. 1991) (citing *In re Caldwell,* 851 F.2d 852 (6th Cir. 1988)). Therefore, the Court will consider alleged errors by the bankruptcy court argued in plaintiffs' and defendant's briefs even though those errors are not specifically identified in the statement of issues. *See Union Oil Co. of Cal. v. Prof'l Realty Invs., Inc.,* 72 F.3d 130 (Table), 1995 WL 717021, at *11 n.4 (6th Cir. 1995) (appellate court may exercise its discretion to consider an issue on appeal that is thoroughly argued in the briefs even if not identified in the statement of issues); *cf. In re Teal*, No. 4:14-CV-15, 2015 WL 1206802, at *2 (E.D. Tenn. Mar. 17, 2015) ("Federal Rule of Bankruptcy Procedure 8006 requires that the appealing party state before the bankruptcy court the issues upon which it bases its appeal. When 'there are no exceptional circumstances, failure to comply with Rule 8006 waives the omitted issue on appeal.'") (quoting *In re Am. Cartage, Inc.,* 656 F.3d 82, 91 (1st Cir. 2011)).

# III. APPLICABLE LAW

## A. Standard of Review

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). Plaintiffs' adversary claims are brought pursuant to 11 U.S.C. § 523, which governs exceptions to the dischargeability of a debt in bankruptcy. "'A bankruptcy court's judgment determining dischargeability is a final and appealable order.'" *In re Cottingham*, 473 B.R. 703, 705 (B.A.P. 6th Cir. 2012) (quoting *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox),* 370 B.R. 104, 109 (B.A.P. 6th Cir. 2007) (further citation omitted)).

"Determinations of dischargeability under 11 U.S.C. § 523 are conclusions of law reviewed de novo. De novo review requires the appellate court [to determine] the law independently of the trial court's determination." *In re Cottingham*, 473 B.R. at 705 (alteration in original) (internal citations and quotation marks omitted) (further citation omitted).

"However, [t]he factual findings underlying the bankruptcy court's dischargeability ruling are upheld on appeal unless they are clearly erroneous. A bankruptcy court's findings of fact should not be disturbed simply because another trier of fact might construe the facts differently or reach a different conclusion." *Id.* at 705-06 (internal citations and quotation marks omitted) (further citation omitted). "If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous." *Gen. Motors Acceptance Corp. v. Cline*, No. 4:07 CV 2576, 2008 WL 2740777, at *3 (N.D. Ohio July 3, 2008) (citing *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573-75, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)). Moreover, "due regard shall be given to the opportunity of the bankruptcy court to judge the

credibility of the witnesses." *In re Aubiel*, 534 B.R. 300, 302 (B.A.P. 6th Cir. 2015) (quoting *Lester v. Storey (In re Lester),* 141 B.R. 157, 160 (S.D. Ohio 1991) (citing Fed. R. Bankr. P. 8013)).[8] Thus, "[a] factual determination should be upheld unless[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cottingham*, 473 B.R. at 706 (internal citations and quotation marks omitted) (further citation omitted); *see also In re LWD, Inc.*, 340 B.R. 363, 366 (W.D. Ky. 2006) ("This circuit has clearly enunciated that findings of facts of a bankruptcy court should not be disturbed . . . unless there is most cogent evidence of mistake or miscarriage of justice.") (internal quotation marks omitted) (quoting *In re Edward M. Johnson and Assocs.,* 845 F.2d 1395, 1401 (6th Cir. 1988)).

## B. 11 U.S.C. § 523(a)(2)(A)

Plaintiffs' adversary claims are brought pursuant to 11 U.S.C. § 523(a)(2)(A), which provides that an individual debtor is not discharged from a debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent [the debt] is obtained by false

---

[8] *In re Aubiel*, 534 B.R. at 302 n.2:

> Prior to December 2014, Federal Rule of Bankruptcy Procedure 8013 reiterated the language of Federal Rule of Civil Procedure 52(a)(6) governing appeals. In December 2014, Part VIII of the Federal Rules of Bankruptcy Procedure (addressing appeals in bankruptcy cases) was extensively amended and renumbered. The language of Bankruptcy Rule 8013 was omitted. However, the Panel holds that the standard of review, which is well established by case law, has not changed.

pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's ...

financial condition[.]"[9] 11 U.S.C. § 523(a)(2)(A).

> The Sixth Circuit has summarized the elements of a § 523(a)(2)(A) [false representation] claim as follows:
>
>> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
>> (2) the debtor intended to deceive the creditor;
>> (3) the creditor justifiably relied on the false representation; and
>> (4) its reliance was the proximate cause of loss.

*In re Donley*, No. 13-60758, 2014 WL 1577236, at *4 (Bankr. N.D. Ohio Apr. 17, 2014)

(quoting *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 281 (6th

Cir. 1998)). The first element is comprised of two parts, and some courts break those two parts

into separate elements. *See id.* at *4 n.2.

In order to "ensure that the Congressional policy in favor of providing a debtor with a

fresh-start is furthered, exceptions to dischargeability, including that brought under 523(a)(2)(A),

are narrowly construed." *In re Finnegan*, 428 B.R. 449, 453 (Bankr. N.D. Ohio 2010) (citing

---

[9] "[A]ctual fraud as used in § 523(a)(2)(A) is not limited to misrepresentations. 'When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code.'" *In re Detweiler*, 2017 WL 650062, at *12 (quoting *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001)); *see also In re Wilson*, No. 16-30782, 2017 WL 1628878, at *5 (Bankr. N.D. Ohio May 1, 2017) (actual fraud is a separate standard for nondischargeability and does not require a misrepresentation) (citing *Husky Int'l Elecs., Inc. v. Ritz*, —— U.S. ——, 136 S. Ct. 1581, 1587 (2016)). Plaintiffs argued below that Detweiler engaged in a scheme to commit actual fraud, but the bankruptcy court disagreed because "the basis [sic] for the alleged scheme are misrepresentations and omissions" and, thus, plaintiffs were required to prove each element of a § 523(a)(1)(A) misrepresentation claim by a preponderance of the evidence. *In re Detweiler*, 2017 WL 650062, at *12. Plaintiffs do not argue on appeal that the bankruptcy court erred in this regard, and indeed, their appellate brief focuses on misrepresentations and intent. That said, plaintiffs make a passing reference in a footnote that Detweiler engaged in a scheme to defraud them by instructing the Sequatchie Pointe sales force to act fraudulently. (Pls. Br. at 1192-93 n.8.) But plaintiffs did not identify actual fraud in their statement of issues or fully argue that issue in their brief, nor was the issue briefed by defendant. The issue of actual fraud has not been properly brought before this Court on appeal, and will not be further considered. *See Union Oil Co. of Cal.*, 1995 WL 717021, at *11 n.4 (citing *United Transp. Union v. Dole*, 797 F.2d 823, 827-28 (10th Cir. 1986) (holding that, when considering the issue of waiver, adequate briefing on the issue is an important factor)).

*Ewing v. Bissonnette* (*In re Bissonnette*), 398 B.R. 189, 193 (Bankr. N.D. Ohio 2008)). It is plaintiffs' burden to establish by a preponderance of the evidence that the debt at issue is excepted from discharge. *In re Ireland*, 441 B.R. 572, 582 (Bankr. W.D. Ky. 2011) (citing *In re Molino,* 225 B.R. 904, 907 (B.A.P. 6th Cir. 1998)); *In re Finnegan*, 428 B.R. at 453 (same) (citing *Grogan v. Garner,* 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)). Exceptions to the discharge of a debt are construed strictly against the creditor and liberally in favor of the debtor. *In re Ireland*, 441 B.R. at 582 (citing *Gleason v. Thaw,* 236 U.S. 558, 561-62, 35 S. Ct. 287, 59 L. Ed. 717 (1915)).

## IV. DISCUSSION

Plaintiffs' legal and factual challenges to the bankruptcy court's rulings that neither Detweiler nor the Sequatchie Pointe sales force made false representations about construction completion timelines with an intent to deceive revolve around the first and second elements of plaintiffs' § 523(a)(2)(A) claims.

### A. § 523(a)(2)(A) Elements at Issue

#### 1. Material Misrepresentation

For the first element of a § 523(a)(2)(A) claim, plaintiffs must show that: "1) debtor obtained money, 2) there was a material misrepresentation, [and] 3) the debtor knew the representation was false or was at the very least grossly reckless regarding its truth." *In re Detweiler*, 2017 WL 650062, at *12 (citing *Old Republic Title Co. of Tenn. v. Looney (In re Looney),* 453 B.R. 252, 259 (B.A.P. 6th Cir. 2011)). The issue before the bankruptcy court regarding this element was whether Detweiler and the Sequatchie Pointe sales force either knew

the timelines for completion of amenities and utilities were false, or were grossly reckless regarding the truth of the timelines. *Id.* at *13.

The bankruptcy court concluded that, although the timelines turned out to be inaccurate, the sales force did not know their statements were false because they were simply passing along information provided by their supervisor. *Id*. With respect to Detweiler, the bankruptcy court found that even though Detweiler directly made representations regarding project timelines to some plaintiffs, or confirmed representations made by the sales force, there was no evidence that Detweiler knew at the time that those representations were false. Thus, the bankruptcy court concluded that plaintiffs failed to establish that Detweiler either knowingly made a material misrepresentation, or acted with a conscious indifference to the truth, regarding project completion timelines provided to plaintiffs. *Id*.

### 2. Fraudulent Intent

Even though the bankruptcy court concluded that plaintiffs failed to establish the first element of their § 523(a)(2)(A) claim with respect to project timelines, the bankruptcy court went on to analyze the second element—fraudulent intent. "An intent to defraud under § 523(a)(2)(A) is determined under a subjective standard, requiring the plaintiff to show that the debtor did not actually intend to perform those obligations promised." *In re Finnegan*, 428 B.R. at 453 (citing *In re Rembert*, 141 F.3d at 281). Whether or not a debtor intends to perform as promised is a "factually intensive inquiry" that may be established by circumstantial evidence. *Id.* (citing *Weeber v. Boyd* (*In re Boyd*), 322 B.R. 318, 324 (Bankr. N.D. Ohio 2004)).

"[A] Debtor's intention [to defraud] - or lack thereof - must be ascertained by the totality of the circumstances." *In re Rembert*, 141 F.3d at 282 (citing *Universal Card Servs. Corp. v.*

*Feld* (*In re Feld),* 203 B.R. 360, 367 (Bankr. E.D. Pa. 1996)); *In re Giacalone*, No. 05-35632-WSF, 2008 WL 302367, at \*2 (E.D. Mich. Feb. 4, 2008) ("Fraudulent intent is judged under a subjective standard, and is ascertained by the totality of the circumstances, including an examination of whether the creditor's conduct was consistent with an intent to defraud.") (citing *In re Rembert,* 141 F.3d at 282). In evaluating the totality of the circumstances, "what 'courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent.'" *In re Finnegan*, 428 B.R. at 454 (quoting *In re Rembert,* 141 F.3d at 282).

After considering circumstantial evidence and the totality of the circumstances, the bankruptcy court found that Detweiler intended to complete Sequatchie Pointe up until January 15, 2009 (when he missed an installment loan payment and ArborOne declared the loans in default and threatened foreclosure), and realized then that the project could not be finished.[10] *In re Detweiler*, 2017 WL 650062, at \*5. From this factual determination, the bankruptcy court concluded that when Detweiler and the sales force represented timelines for project completion to plaintiffs purchasing lots between 2006 and 2008, they did not intend to deceive plaintiffs because, at the time the lots were sold, Detweiler intended to complete Sequatchie Pointe and did not know that, ultimately, he would be unable to do so. *Id.* at \*15.

### B. Plaintiffs' Challenges on Appeal

Plaintiffs contend that the primary question on appeal is what Detweiler knew about the viability of the Sequatchie Pointe project and when he knew it, and that issue is central to

---

[10] The bankruptcy court refers to a letter dated January 15, 2009 from ArborOne regarding the default due to failure to make an installment payment, but January 15, 2009 was the date of the default. The letter from ArborOne notifying Detweiler of the January 15, 2009 default is dated February 4, 2009. (See Def. App. at 2327-28, referring to exhibit 40 to the deposition of Robert Spivey.)

analysis of plaintiffs' § 523 nondischargeability claims. Underlying this primary issue are plaintiffs' factual and legal challenges to the bankruptcy court's conclusion that neither the Sequatchie Pointe sales force, nor Detweiler, made false representations to, or intended to deceive, plaintiffs who purchased lots between 2006 and 2008 regarding project completion deadlines.[11]

But, before those challenges can be addressed, the Court must first rule on two independent legal issues raised by plaintiffs on appeal. The first is whether the bankruptcy court properly excluded the HUD[12] report as evidence of alleged false representations, and the second is whether the bankruptcy court applied the proper legal standard for determining fraudulent intent.[13]

---

[11] In large part, plaintiffs have not divided their arguments into the separate elements of a § 523(a)(2)(A) claim, identified the alleged errors of the bankruptcy court as legal or factual, or analyzed each alleged error under the applicable standard of review. And, in some instances, plaintiffs assert facts and arguments but fail to provide the Court with citations to the record that support those assertions. For example, plaintiffs assert that, at trial, plaintiffs "put on days of proof" (Pls. Br. at 1196) and presented a "mountain of circumstantial evidence" in support of Detweiler's intent to deceive (*id.* at 1176), but these facts were not considered and the bankruptcy court's "neglect of the facts" (*id.* at 1198) constitutes reversible error. As an initial matter, the bankruptcy court noted at the outset of its opinion that, "[r]egardless of whether specifically mentioned in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of witnesses, considered all of the evidence, and reviewed the entire record of the case." *In re Detweiler*, 2017 WL 650062, at *1. Although plaintiffs claim that the bankruptcy court erred by ignoring evidence, plaintiffs do not point the Court to any specific evidence allegedly ignored by the bankruptcy court that would establish on appeal that one or more findings of fact by the bankruptcy court was clearly erroneous. It is not the Court's duty to search the record and discern, on plaintiffs' behalf, which facts and arguments are relevant to their arguments on appeal. *See In re Kennedy*, 249 F.3d 576, 579 n.3 (6th Cir. 2001) (citing *Morales v. Am. Honda Motor, Co., Inc.,* 151 F.3d 500, 505 n.1 (6th Cir. 1998)).

[12] HUD is an acronym for the U.S. Department of Housing and Urban Development.

[13] Another issue may be that of adverse inference. At trial, plaintiffs argued that they were entitled to an adverse inference with respect to Detweiler and his daughter, Cheryl McDonald ("McDonald"), because they did not testify at trial. The bankruptcy court declined to apply a negative inference because plaintiffs subpoenaed both witnesses and both were available to testify. Detweiler was present at trial. Although plaintiffs could have called Detweiler and McDonald to testify, they did not do so, electing instead to introduce Detweiler's deposition testimony. *In re Detweiler*, 2017 WL 650062, at *9. Plaintiffs mention the issue of adverse inference in a footnote (Pls. Br. n.4), but do not challenge the bankruptcy court's finding regarding the availability of Detweiler and McDonald to testify at trial, or that plaintiffs made a tactical decision to neither call those witnesses at trial nor introduce their deposition testimony into evidence. Nor do plaintiffs argue that the bankruptcy court incorrectly applied the law with respect to adverse inferences. To the extent that plaintiffs' footnote constitutes an appeal of the bankruptcy court's adverse inference ruling, the Court has reviewed both the underlying facts and law, and finds no error.

**1. The bankruptcy court did not err in excluding the HUD report as evidence of misrepresentation**

In their post-trial brief submitted to the bankruptcy court, plaintiffs argued that the HUD report prepared by Detweiler for Sequatchie Pointe, and provided to plaintiffs, contained false representations regarding the project and should be considered by that court as evidence for plaintiffs' § 532(a)(2)(A) claims. The bankruptcy court ruled, however, that the alleged deficiencies in the HUD report could not be used as a factual basis for plaintiffs' false representation claims because that issue was raised by plaintiffs for the first time in post-trial briefing in violation of Fed. R. Civ. P. 9(b), and was not tried by implied consent. But, because Detweiler cross-examined plaintiffs at trial as to whether they received the HUD reports in refuting plaintiffs' justifiable reliance, the bankruptcy court considered the reports for the limited purpose of weighing that defense. *In re Detweiler*, 2017 WL 650062, at *10-11. Although not identified in the statement of issues, plaintiffs contend on appeal that the bankruptcy court erred by refusing to consider the HUD reports as additional evidence of fraudulent representation under § 534(a)(2)(A). (Pls. Br. at 1200-03.)

The relief plaintiffs seek on appeal is a reversal of the bankruptcy court's ruling and remand for a determination of damages. (*See id*. at 1204.) But even if the Court were to reverse the bankruptcy court's exclusion of the HUD report, the only relief that this Court could provide is to remand the case to the bankruptcy court for a determination as to whether the HUD report constituted a false representation under § 532(a)(2)(A) and, if it did, whether that finding affected the outcome of the bankruptcy court's analysis of fraudulent intent. Thus, the Court considers the HUD issue first.

Plaintiffs do not contend that the bankruptcy court erred in finding that: (1) plaintiffs raised the issue of the HUD report's deficiencies in support of their fraudulent misrepresentations claim for the first time in their post-trial brief, (2) there was no discussion or testimony at trial regarding the HUD report's alleged deficiencies, and (3) defendant was not on notice of the issue of the HUD report's deficiencies prior to plaintiffs' post trial brief. *See In re Detweiler,* 2017 WL 650062, at *10-11. But plaintiffs argue on appeal that the HUD report was prepared by Detweiler and stipulated into evidence at trial, and that Detweiler used the report at trial in an attempt to show that plaintiffs did not justifiably rely on any alleged misrepresentations regarding their properties that were made by Detweiler or the Sequatchie Pointe sales force. Plaintiffs reason, therefore, that in their post-trial brief they were merely pointing out the deficiencies in the report, and those deficiencies should be admissible as evidence of false representations. (Pls. Br. at 1200-03.)

Plaintiffs cite no legal authority in support of their argument that the bankruptcy court erred as a matter of law by excluding the HUD reports as evidence of misrepresentation by Detweiler. After conducting a de novo review, the Court concludes that the bankruptcy court did not err.

The pleading requirements of Fed. R. Civ. P. 9(b) are applicable to fraudulent misrepresentation claims under § 523(a)(2)(A).

> Federal Rule of Civil Procedure 9(b), applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7009, requires that allegations of fraud must be pled with particularity. *See* Fed. R. Civ. P. 9(b). This requirement includes allegations of fraud made pursuant to 11 U.S.C. § 523(a)(2)(A). *See MBNA America Bank, N.A. v. Henning (In re Henning),* 309 B.R. 508, 515 (Bankr. W.D. Mich. 2004). Courts in this Circuit have explained that "'[t]o satisfy Fed. R. Civ. P. 9(b), a plaintiff must at a minimum allege the *time, place and contents of the misrepresentation(s)* upon which he relied.'" *Matter of Dunlevy,* 75 B.R. 914

(Bankr. S.D. Ohio 1987) (quoting *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir. 1984)) (emphasis in original).

*In re Mueller*, No. 11-13016, 2012 WL 32570, at *4 (Bankr. E.D. Tenn. Jan. 6, 2012).

Plaintiffs' allegations concerning misrepresentations in the HUD report were not raised in their complaint and pled with particularity as required by Rule 9(b). *See Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (In order to satisfy the pleading requirements of Rule 9(b), plaintiffs' complaint must (1) specify the alleged fraudulent statements, (2) identify the speaker (or source), (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.) (citation omitted). The bankruptcy court correctly determined that plaintiffs' complaint failed to comply with the requirements of Rule 9(b) in pleading their alleged misrepresentations with respect to the HUD report.

Even if plaintiffs failed to comply with the pleading requirements of Rule 9(b) with respect to alleged misrepresentations in the HUD report, the report could still be considered as evidence with respect to such misrepresentations if those issues were tried by consent at trial. Fed. R. Civ. P. 15(b)(2) provides that:

> ***For Issues Tried by Consent.*** When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

"Rule 15(b) 'is designed to allow parties to a civil action to get to the heart of the matter and not have relevant issues obscured by pleading niceties. It was not designed to allow parties to change theories in mid-stream.'" *Ways v. Miami Univ. of Ohio*, 604 F. App'x 445, 447 n.3 (6th Cir. 2015) (quoting *Donald v. Wilson,* 847 F.2d 1191, 1198 (6th Cir. 1988) (*overruled on other grounds as recognized by Doe v. Sullivan,* 956 F.2d 545, 551 n.1 (6th Cir. 1992))); *Kehoe*

*Component Sales Inc. v. Best Lighting Prod., Inc.*, 796 F.3d 576, 596 (6th Cir. 2015) (quoting *Yellow Freight Sys., Inc. v. Martin,* 954 F.2d 353, 358 (6th Cir. 1992)).

Plaintiffs maintain that, because the parties stipulated to the introduction of the HUD report at trial, and Detweiler was aware of the content of the HUD report and relied on it when cross-examining plaintiffs on the issue of justifiable reliance, the Court should conclude that the issue was tried by implied consent. Plaintiffs are wrong.

"'Implied consent is not established merely because one party introduced evidence relevant to an unpleaded issue and the opposing party failed to object to its introduction. It must appear that the parties understood the evidence to be aimed at the unpleaded issue.'" *Kehoe Component Sales Inc.*, 796 F.3d at 595 (quoting *Yellow Freight Sys., Inc.,* 954 F.2d at 358); *McCann v. Midland Cty. Educ. Servs. Agency*, No. 06-13150-BC, 2008 WL 2559281, at *12 (E.D. Mich. June 23, 2008) (same) (quoting *Sasse v. United States Dep't of Labor,* 409 F.3d 773, 781 (6th Cir. 2005) (citation omitted)). Detweiler's introduction of the HUD report in defense of plaintiffs' claims with respect to the element of justifiable reliance did not put him on notice that plaintiffs were adding a new alleged misrepresentation—the HUD report—to their claims. Indeed, even evidence introduced at a trial "'that is relevant to a pleaded issue as well as an unpleaded issue cannot serve to give the opposing party fair notice that the new, unpleaded issue is entering the case.'" *Sasse*, 409 F.3d at 781 (quoting *Yellow Freight Sys.,* 954 F.2d at 358). Because Detweiler was not on notice at trial that plaintiffs were adding a new alleged misrepresentation to their § 523 claims, he did not have an opportunity to present a defense to that unpled allegation. *Id.* ("We must examine 'whether the employer knew what conduct was in

issue and had an opportunity to present his defense.'") (quoting *Yellow Freight Sys.,* 954 F.2d at 358).

After conducting a de novo review, the Court concludes that the alleged misrepresentations contained in the HUD report were not tried by implied consent, and the bankruptcy court did not err in excluding the HUD report as evidence for that purpose.

**2. The bankruptcy court did not err by refusing to apply gross recklessness as the standard for determining fraudulent intent under § 523(a)(2)(A)**

Plaintiffs argued before the bankruptcy court that, even if that court did not find that Detweiler intentionally deceived plaintiffs regarding Sequatchie Pointe completion deadlines, it is enough to satisfy the nondischargeability requirements of § 523(a)(2)(A) if Detweiler was at least grossly reckless. *In re Detweiler*, 2017 WL 650062, at *14. The bankruptcy court disagreed, finding that gross recklessness is part of the analysis for the first element of misrepresentation, but not the second element of intent to defraud. *Id*. at *15. Plaintiffs contend on appeal that the bankruptcy court erred in this regard because § 523(a)(2)(A) "clearly allows for the [p]laintiffs to travel under a theory of either knowing misrepresentation *or* gross recklessness, both of which [plaintiffs] proved." (Pls. Br. at 1194-95 (emphasis in original).)

Plaintiffs cite no legal authority to support their argument that gross recklessness alone is sufficient for a finding of nondischargeability under § 523(a)(2)(A), nor explain the error of the bankruptcy court's legal analysis. The Court has considered *In re Crowe*, No. 13-31450, 2014 WL 4723084 (Bankr. N.D. Ohio Sept. 22, 2014), which plaintiffs argued before the bankruptcy court in support of their position. That case does not support plaintiffs' argument.

*In re Crowe* contains a detailed discussion regarding the definition of gross recklessness in the context of the first element of a § 523(a)(2)(A) claim, but does not hold that gross

recklessness alone is the standard for finding fraudulent intent and nondischargeability. Having conducted a de novo review, the Court finds that the bankruptcy court did not err by ruling that gross recklessness is not the standard (or a substitute) for fraudulent intent under § 523(a)(2)(A). *See In re Copeland*, 291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003) ("Although the court believes that the Debtor's actions and/or inactions rise above mere negligence to a level of gross recklessness, the court cannot conclude that the Debtor's conduct rose to the level of actual fraud or deceit as required by § 523(a)(2)(A). Accordingly, this element [of fraudulent intent] has not been satisfied."); *see also In re Moses*, 547 B.R. 21, 38 (Bankr. E.D.N.Y. 2016) ("'a reckless disregard for whether the representation was false' . . . without more, did not demonstrate an intent to deceive or defraud") (quoting *New York v. Suarez (In re Suarez),* 367 B.R. 332, 350 (Bankr. E.D.N.Y. 2007)).

### 3. The bankruptcy court did not err in concluding plaintiffs failed to carry their burden of proof as to Detweiler with respect to elements 1 and 2 of their § 523 claims

The Court now turns to the primary question presented by plaintiffs on appeal—what Detweiler knew about the viability of the Sequatchie Pointe project and when he knew it. (*See In re Detweiler*, 2017 WL 650062, at *14; Pls. Br. at 1173.) Fraudulent intent can be found based upon circumstantial evidence and the totality of the circumstances. As the bankruptcy court pointed out, fraudulent intent could be established from circumstantial evidence by showing, for example, that Detweiler continued to sell lots after he knew the project was impossible to complete. *In re Detweiler*, 2017 WL 650062, *15. The bankruptcy court found, however, that the evidence showed Detweiler did not know Sequatchie Pointe could not be completed until January 2009 and, because the last lot was sold in 2008, that court concluded that Detweiler did

not possess fraudulent intent at the time construction completion timelines were represented to plaintiffs. This conclusion contains both factual and legal components.

Sequatchie Pointe was funded by a package of agreements with the lender, ArborOne.[14] On the issue of Detweiler's intent, the bankruptcy court considered Detweiler's deposition testimony that he always intended to complete the project and did not realize the project could not be finished until ArborOne required 100% of lot sales. *Id.* The bankruptcy court also considered the testimony of Robert Spivey ("Spivey") and Russell Phillips ("Phillips"), both of whom had knowledge of the ArborOne financing and defaults. They testified that: (1) ArborOne did not require 100% of lot sales until January 2009, and (2) completion of Sequatchie Pointe did not become unfeasible until January 2009 when ArborOne required 100% of lot sales. *See id.* at *5-6. "The testimony of Mr. Phillips and Mr. Spivey confirm [sic] that ArborOne continued to fund the project until January of 2009." *Id.* at *16. After considering all the evidence, the bankruptcy court found that ArborOne did not require 100% of lot sales (effectively ending funding for the project) until January 2009 when an installment loan payment was missed.[15] The bankruptcy court also found that Detweiler personally signed for Sequatchie Pointe loans, mortgaged other properties, and sold receivables in order to procure funds for Sequatchie

---

[14] Plaintiffs do not challenge on appeal the bankruptcy court's general description of Detweiler's financing arrangements for Sequatchie Pointe. *See In re Detweiler*, 2017 WL 650062, at *5. Briefly, JJDEI purchased the land for Sequatchie Pointe for $10,898,600.00. The project was financed by ArborOne Enterprises, Inc. ("ArborOne") utilizing two loans and a revolving line of credit that involved Sequatchie LLC, JJDEI, Detweiler, and Wilder Mountain LLC (one of JJDEI's previous projects). Detweiler received default letters from ArborOne in December 2006, May 2007, and July 2007 related to the covenant requiring Detweiler to maintain 35% equity in the project. In these letters, ArborOne set forth terms by which ArborOne would waive the default, and Detweiler met those terms. In January 2009, however, the loans were declared in default because an installment payment was missed. Detweiler appealed and attempted to refinance the loans, but ArborOne denied his appeal by letter dated April 2, 2009.

[15] Spivey testified that Detweiler's default in January 2009 was the first monetary default of his loan with ArborOne for Sequatchie Pointe. (Def. App. at 2327-29.)

Pointe.[16] *See id.* at \*5-6. The bankruptcy court also made findings regarding development of roads and utilities at Sequatchie Pointe before January 2009.[17] Plaintiffs do not contend on appeal that bankruptcy court's findings regarding the testimony of Spivey and Phillips, Detweiler's personal efforts to infuse funds into Sequatchie Pointe, or description of the status of roads and utilities before construction stopped in early 2009, are clearly erroneous.

As they did at trial and in their motion for reconsideration, plaintiffs argue here that the bankruptcy court erred in finding that Detweiler did not know that he would be unable to complete Sequatchie Pointe until January 2009. Plaintiffs contend that the bankruptcy court "turned a blind eye" to Detweiler's admission that he knew "it was over" when he received a letter from the lender on May 16, 2007 and, thus, representations to plaintiffs purchasing lots between 2006 and 2008 regarding project completion timelines were false and made with the intent to deceive. (Pls. Br. at 1164-65, 1174-77.) The Court applies the clearly erroneous standard to plaintiffs' appeal of this factual issue.

The "admission" to which plaintiffs refer is Detweiler's deposition testimony that, "[w]hen [ArborOne] sent me a letter and said they wanted 100 percent of the [lot sales], I knew it was over with." (Pls. App. at 1332.) Plaintiffs maintain that this admission concerns a letter

---

[16] Detweiler testified at his deposition that in order to procure funds to invest in Sequatchie Pointe he sold "paper" at a discount, and mortgaged personal property (including his home) and rental properties. (*See* Def. App. at 2301-02.)

[17] The bankruptcy court stated:

> By the time construction ceased at Sequatchie Pointe in early 2009 there were paved roads throughout Phase 1 in Tennessee. Electricity and water lines had been run through Phase 1 along the main roads, but there is no water supply to connect to the lines. Nor is any supply nearby. Gravel roads had been installed through eighty percent of Phase 2. However, the road into the project over a river was never fully completed. Currently, the internal roads do not connect to the state highway, the entrance was never completed, and a number of the roads have been damaged by subsequent mountain slides.

*In re Detweiler*, 2017 WL 650062, at \*7; *see also* Detweiler's response to plaintiffs' interrogatory no. 22 regarding infrastructure investment (Def. App. at 2304).

Detweiler received from ArborOne dated May 16, 2007. (Pls. Br. at 1174.) But Detweiler testified at his deposition that he did not know the date when ArborOne required 100% of lot sales. (*See* Pls. App. at 1332.) Plaintiffs argue that the bankruptcy court "gives no explanation for why the [bankruptcy] court believes the May 16, 2007 letter does not say exactly what it says." (Pls. Br. at 1177.) But on appeal, plaintiffs do not point this Court to any language in the May 16, 2007 letter regarding 100% of lot sales, nor did the Court's examination of the letter[18] reveal such language. Plaintiffs contend that multiple deponents testified about the May 2007 letter, but do not point the Court to any testimony that ArborOne actually required 100% of lot sales in May 2007.

The bankruptcy court considered the May 2007 letter from ArborOne at trial, and found that it advised Detweiler of technical defaults related to owner equity in the project, but waived the default under conditions (other than 100% of lot sales) that were met by Detweiler. *In re Detweiler,* 2017 WL 650062, at *16. Plaintiffs' argument on appeal attempts to reframe Detweiler's "admission" that he knew the project could not be completed when ArborOne required 100% of lot sales, to an admission that he knew the project could not be completed when the loans were in curable default of the owner equity provision. (*See* Pls. Br. at 1175 ("[A]nd all of the purchases occurred when Detweiler was in default of, at the very least, his equity to debt ratio obligation. . . . This is all a critical component of understanding exactly when Detweiler explicitly stated that he knew he would never complete the project[.]").)

The bankruptcy court's finding that Detweiler did not know that he could not complete Sequatchie Pointe until January 2009 when ArborOne ceased funding the project is not clearly

___

[18] See Pls. App. at 1460-61.

erroneous. Plaintiffs' entire argument is based upon the premise that the bankruptcy court should have viewed the facts differently. But that court's factual determination as to when Detweiler knew the project could not be completed is not clearly erroneous simply because a different conclusion may have been possible. *In re Cottingham*, 473 B.R. at 705-06; *Gen. Motors Acceptance Corp.*, 2008 WL 2740777, at *3. The bankruptcy court's fact finding that Detweiler did not realize that he could not complete the project until January 2009 is supported by the record and, considering all of the evidence, this Court is not left with a definite and firm conviction that an error has been committed. *In re Cottingham*, 473 B.R. at 705-06.

Plaintiffs also argue on appeal, as they did at trial, that Detweiler's intent to defraud is demonstrated by his alleged instructions to utilize construction equipment on weekends to make it appear that construction was being done, and to use CB[19] radios to make it appear that lots were being sold. (*See* Pls. Br. at 1162-73.)

With respect to the alleged use of radios by the Sequatchie Pointe sales force to broadcast fake lot sales, plaintiffs cite the testimony of project manager Dan Graber ("Graber") and salesperson Brandon Olinger ("Olinger"). (*See* Pls. Br. at 1163.) But the bankruptcy court found that the testimony of Graber was not credible for reasons detailed in that court's rulings,[20] and Olinger's testimony does not help plaintiffs' cause. Olinger testified that (1) Graber had the idea of using "walkie-talkies" and a "failed attempt" to use them, (2) but he never had one, and (3) was not aware of radios ever being used to convey fake lot sales at Sequatchie Pointe. (Adversary Case Doc. No. 213-1 at page 25-26 of 93.) Detweiler, who had used radios in the

---

[19] "CB" is an acronym for citizens' band.

[20] The Court does not find the bankruptcy court's assessment of Graber's credibility to be clearly erroneous, or any other reason not to give due regard to that court's finding. *See In re Aubiel*, 534 B.R. at 302.

past for a different project, denied that CB's were used at Sequatchie Pointe. (Pls. App. at 1329.) As before, plaintiffs' argument regarding the radios simply advocates a different view of the evidence. This is insufficient to establish that the bankruptcy court was clearly erroneous in finding that plaintiffs failed to show radios were actually used to broadcast fake lot sales as described by Graber, or that any impetus for doing so arose from Detweiler.

With respect to the use of construction equipment on weekends, Detweiler testified that he may have told Graber to operate construction equipment on weekends if there was an actual construction purpose, but not simply to make it appear that construction was underway. (*Id.* at 1330.) Other than the testimony of Graber (whom the bankruptcy court determined was not credible), there is no evidence that any use of construction equipment on the weekends was not actually for a construction purpose, and the bankruptcy court's finding in that regard is not clearly erroneous.

Nor did the bankruptcy court err in its legal conclusion that, based on the totality of the evidence, Detweiler did not possess an intent to defraud. "A fraudulent promise under § 523(a)(2)(A) requires proof that at the time the debtor made it, he or she did not intend to perform as required." *Risk v. Hunter (In re Hunter)*, 535 B.R. 203, 218 (Bankr. N.D. Ohio 2015) (internal quotation marks and citations omitted). This legal determination is subjective, based on the totality of the circumstances, including circumstantial evidence of the debtor's conduct. *In re Rembert*, 141 F.3d at 281-82; *In re Alwood*, 531 B.R. 182, 188 (Bankr. N.D. Ohio 2015) (citing *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999)). In order to prove fraudulent intent, plaintiffs must establish that Detweiler did not intend to complete Sequatchie

Pointe at the time representations were being made to plaintiffs between 2006 and 2008 regarding project completion deadlines.

Considering the totality of the evidence found by the bankruptcy court, including that: (1) ArborOne funded Sequatchie Pointe until January 2009, (2) Detweiler personally guaranteed the Sequatchie Pointe loans and invested his own funds in the project, (3) Detweiler obtained required bonds and permits and made measurable progress in the installation of roads and utilities at Sequatchie Pointe, and (4) Detweiler testified that he did not realize that Sequatchie Pointe could not be completed until ArborOne ceased funding the project in January 2009, the Court agrees with the bankruptcy court's conclusions that these are not the actions of someone who knew the project was hopeless from the start. *See In re Detweiler*, 2017 WL 650062, at *15; *In re Giacalone*, 2008 WL 302367, at *2 ("Fraudulent intent is judged under a subjective standard, and is ascertained by the totality of the circumstances, including an examination of whether the creditor's conduct was consistent with an intent to defraud."); *In re Mills*, 345 B.R. 598, 605 (Bankr. N.D. Ohio 2006) ("[A] debtor acting with the intent to defraud will not generally undertake measures to perform their obligation.") (citing *Anastas v. Am. Savings Bank (In re Anastas),* 94 F.3d 1280, 1285 (9th Cir. 1996)); *In re Rahrig*, 373 B.R. 829, 834 (Bankr. N.D. Ohio 2007) (an indicia of debtor's intent in nondischargeability proceedings based on debtor's false representations centers on whether debtor undertook any of the steps necessary to perform as promised) (citing among authority *Williamson v. Busconi,* 87 F.3d 602, 603 (1st Cir. 1996)).

Exceptions to discharge are strictly construed against the creditor, who bears the burden of proving the necessary elements of nondischargability by a preponderance of the evidence, and

liberally in favor of the debtor. *In re Wilson*, No. 16-30782, 2017 WL 1628878, at *4 (Bankr. N.D. Ohio May 1, 2017) (citing *In re Rembert,* 141 F.3d at 281); *In re Hicks*, No. 11-32263, 2014 WL 2624932, at *3 (Bankr. E.D. Tenn. June 12, 2014) (citing *Grogan,* 498 U.S. at 291); *In re Rembert,* 141 F.3d at 281). "'[I]f there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor.'" *In re Alwood*, 531 B.R. at 188 (quoting *ITT Fin. Servs. v. Szczepanski (In re Szczepanski),* 139 B.R. 842, 844 (Bankr. N.D. Ohio 1991)).

    After conducting a de novo review, the Court concludes that there is room in the totality of circumstantial evidence for an inference that, between 2006 and 2008 when plaintiffs purchased undeveloped land at Sequatchie Pointe, Detweiler intended to complete the project and, therefore, did not possess fraudulent intent with respect to representations made to plaintiffs regarding project completion. *In re Alwood*, 531 B.R. at 188. Accordingly, the issue of nondischargeability is resolved in favor of the debtor. *In re Ireland*, 441 B.R. at 582.

**4. The bankruptcy court did not err in concluding plaintiffs failed to carry their burden of proof as to the Sequatchie Pointe sales force with respect to elements 1 and 2 of their § 523 claims**

    On appeal, plaintiffs contend that the bankruptcy court erred in examining whether the Sequatchie Pointe sales force had an intent to deceive plaintiffs and should have, instead, focused on whether Detweiler had an intent to deceive. Plaintiffs' theory is that, even if the sales force did not intend to deceive plaintiffs, Detweiler is liable because he knew that Sequatchie Pointe was not viable from the inception of the project, and is therefore responsible for the representations of his sales force that ultimately proved to be inaccurate. (*See* Pls. Br. at 1192.) The Court has held, however, that the bankruptcy court did not err in concluding the plaintiffs

failed to establish the first two elements of their § 523 claims as to Detweiler. Because the Court has affirmed the bankruptcy court's ruling that Detweiler did not possess fraudulent intent at the time the sales force represented project completion timelines to plaintiffs, it is arguably unnecessary for the Court to consider plaintiffs' appellate arguments regarding the sales force. The Court will nevertheless briefly address those arguments for the sake of completeness.

Plaintiffs concede that the Sequatchie Pointe sales force was unaware of the financial viability of the project, but insist that the sales force was grossly negligent by representing construction timelines to plaintiffs with no supporting knowledge, and intentionally deceived plaintiffs with deceptive sales practices. (*Id*. at 1170 n.3.) These arguments are unavailing on appellate review.

First, gross negligence is not the legal standard for analyzing either the first or second element of a § 523(a)(2)(A) claim. *See In re Looney*, 453 B.R. at 259 (citing *In re Rembert,* 141 F.3d at 280-81). But even if gross negligence were sufficient for the first element, plaintiffs' arguments would still fail.

With respect to plaintiffs' contention that the Sequatchie Pointe sales force represented construction timelines to plaintiffs with no supporting knowledge, plaintiffs do not maintain that the bankruptcy court erred in finding that the timelines represented to plaintiffs by the Sequatchie Pointe sales force were based upon bond documents for the roads and upon information received from Graber, the Sequatchie Pointe project manager. *In re Detweiler*, 2017 WL 650062, at *6. Ervin Moore ("Moore") testified with respect to project timelines that members of the sales force "were only using the information at hand[,]" that he did not "think that any of [the sales force] literally went out there to mislead anyone." (Pls. App. at 1478.) Moore's testimony was

corroborated by the testimony of other members of the sales force. *See In re Detweiler*, 2017 WL 650062, at *7. The bankruptcy court's factual finding that the Sequatchie Pointe sales force used construction timelines provided to them by their supervisor is not clearly erroneous.

Plaintiffs also argue that some members of the sales force were told by Graber at a meeting to lie about project completion dates and, thus, intended to deceive plaintiffs by doing so. (Pls. Br. at 1157, citing the deposition of Moore.) Moore, who was present at that meeting, testified that Detweiler was not present and there was no indication that Graber's statements originated with Detweiler in any way. As Moore put it, "I think it was all [Graber]." (*See* Pls. App. at 1465-67.) Indeed, Moore testified that, in his view, Detweiler would have fired a sales person for misrepresenting or lying to a prospective purchaser. (Def. App. at 2311.). Moreover, plaintiffs have not shown that members of the sales force actually lied to plaintiffs about deadlines. Finally, plaintiffs contend that the sales force intentionally deceived plaintiffs by employing deceptive sales practices by using a radio to call out fake lot sales, which has already been addressed by the Court.

Plaintiffs' arguments on appeal regarding the first two elements of their § 523 claim as to the Sequatchie Pointe sales force simply advocate their own view of how the bankruptcy court should have construed the facts. That court's findings of fact, however, are not clearly erroneous simply because two different views of the evidence are possible. *In re Cottingham*, 473 B.R. at 705-06; *Gen. Motors Acceptance Corp.*, 2008 WL 2740777, at *3. The bankruptcy court's factual findings are supported by the record, and this Court is not left with a definite and firm conviction that a mistake has been committed. Thus, the Court concludes that the bankruptcy court's findings of fact underlying its legal conclusion that the Sequatchie Pointe sales force did

not make false representations with an intent to deceive plaintiffs regarding project completion timelines are not clearly erroneous. And, after conducting a de novo review, the Court also concludes that the bankruptcy court did not commit an error of law in holding that these facts were insufficient for plaintiffs to establish the first and second elements of their § 523(a)(2)(A) claims. *In re Cottingham*, 473 B.R. at 705-06.

### 5. Governing Law and Imputed Agency

Plaintiffs' appeal, as embodied in their statement of issues, contends that the bankruptcy court erred in applying federal, rather than Tennessee law. Nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) is governed by federal, not state, law. *See In re Sherrick*, 573 B.R. 745, 755 n.2 (Bankr. M.D. Tenn. 2017) (citation omitted); *In re Batson*, 568 B.R. 281, 288 (Bankr. M.D. Tenn. 2017); *In re Brace*, 131 B.R. 612, 614 (Bankr. W.D. Mich. 1991) (determining the dischargeability of a debt under § 523(a)(2)(A) is purely a matter of federal law); *In re Grant*, No. 12-33744, 2013 WL 4462706, at *5 (Bankr. N.D. Ohio Aug. 19, 2013) (citing *Grogan*, 498 U.S. at 289). The bankruptcy court appropriately applied federal law to determine whether plaintiffs carried their burden of proof to establish the elements of nondischargeability under § 523(a)(2)(A).

Applying federal law, the bankruptcy court found that the misrepresentations of the Sequatchie Pointe sales force regarding the existence of Georgia bonds should be imputed to Detweiler because he knew that the sales force was misrepresenting that bonds covered property in Georgia and did not correct this inaccuracy. Thus, the bankruptcy court found Detweiler was liable through the theory of imputed fraud for the misrepresentations concerning bonds to the

McAvoys, Stones, and Ferkinhoffs, and those debts were not dischargeable. *In re Detweiler*, 2017 WL 650062, at *19. That ruling by the bankruptcy court is not on appeal here.

The issue of imputed agency concerning representations about project completion deadlines was not decided by the bankruptcy court (under federal or state law) because the bankruptcy court determined that, while Detweiler may not have recognized his limitations and may have underestimated the experience required to complete a project like Sequatchie Pointe, those shortcomings did not equate to a finding of intent to deceive under § 523(a)(2)(A) under federal bankruptcy law. *Id.* at *19.

Because the Court has affirmed the bankruptcy court's ruling that, as a matter of law, neither Detweiler nor the sales force made false representations or intended to deceive plaintiffs with respect to representations concerning project completion deadlines, there is no liability to impute in either direction between Detweiler and the Sequatchie Pointe sales force. Thus, plaintiffs' arguments regarding agency and related choice of law issues are moot, and need not be addressed by this Court on appeal.

## V. CONCLUSION

For all of the foregoing reasons, the orders and decisions of the bankruptcy court challenged on appeal are affirmed.

**IT IS SO ORDERED**.

Dated: March 23, 2018

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**